Submitted on briefs at Pendleton, October 30, 1928, affirmed January 8, 1929.

HENRY Y. BLACKWELL *v.* FELIX JOHNSON ET AL.

(273 Pac. 332.)

676

For appellant there was a brief over the names of *Mr. P. J. Gallagher* and *Mr. E. P. Truesdell*.

For respondents there was a brief over the names of *Mr. George H. Cattanach* and *Mr. E. B. Moore*.

McBRIDE, J.—There is very little contradictory testimony in this case. Both parties are relying more upon the legality of admitted transactions than upon any serious contradiction in the evidence as to what these actual transactions were.

The facts in the case appear to be about as follows: In 1920, the plaintiff bought the lands in controversy from I. G. Bogard for the sum of $14,000. Of this price $5,000 was paid in cash and the balance was represented by notes payable in from one to nine years in amounts of $1,000 per year, with interest at 6 per cent per annum, said notes being secured by mortgages running to Bogard on these lands; $2,000 representing the notes due in one and two years were paid, leaving a balance of $7,000 unpaid. These notes were transferred by Bogard to different parties and assignments of the mortgages made, Bogard retaining $1,400 of the notes which he had assigned to Bayley as collateral for a loan of $1,000. In February, 1925, Blackwell having failed to pay some of the notes as they became due, and being about two

years behind on all of his interest, and there being delinquent taxes against the property in an amount of $1,000 or more, the holders of these obligations concluded to foreclose their mortgages and prepared a complaint for that purpose. Blackwell having learned of these opened negotiations with the parties made a deed to R. J. Bayley as trustee for the holders of these notes and mortgages, and Bayley at the same time gave Blackwell an option to purchase for one year, and leased the property to Blackwell for the period ending December 31, 1925. At the end of the term of the option it was extended until about January 1, 1926, and a second lease of the property was made to Blackwell. Blackwell contends that the deed was a mortgage, while the defendants claim that it was an absolute deed and that the defendant Bayley, as trustee by virtue of said deed, is the owner of said property and entitled to the possession thereof.

There is no question but that a deed, although absolute on its face as this is, may be declared a mortgage even upon the strength of oral testimony to that effect if such testimony is satisfactory, and, in fact, there is no difference between counsel as to the authorities, but merely a difference as to their application to this particular case. In the mind of the writer the real test is what the parties agreed upon and intended when the conveyance was made. If the original debt continued and the execution of the deed was merely to secure its payment, then, no matter what means or subterfuges were resorted to to make the transaction appear proper and absolute, it is still a mortgage, but there is nothing in law or morals to prevent a creditor from taking a deed in payment of his debt and giving to the debtor the privilege of repurchasing the property within a cer-

tain time. The testimony for defendants in this case indicates that such was the intention here. The mortgages were for the purchase price and no liability could attach except to the land covered by the mortgages, and upon foreclosure the creditors would get nothing beyond what the land brought them, and it is very evident from the testimony that it would be doubtful whether the land would have brought a sufficient sum upon a foreclosure sale to pay the amounts due on the notes, the delinquent taxes and the necessary costs and expenses of foreclosure. In fact, it is fair to say that it is not probable that any such sum could have been realized. Under these circumstances, it was but natural that they should be willing to take the land by a deed to one of their number rather than go to the unnecessary expense of foreclosing their mortgages. They had nothing to gain by taking new securities and they did not exact any new securities.

The testimony of the witnesses is to the effect that it was to be an absolute conveyance of the land and an absolute satisfaction of their debts and the plaintiff has not in terms denied that such was the mutual understanding. The one plausible ground for plaintiff's contention that this deed was intended for a mortgage arises from the fact that the old notes were not given up nor the mortgage satisfied. This has very often been held as a strong indication that the intention was not to cancel the original debt but to further secure it, but here the debt was and is admitted. It was as well secured by the mortgages then held by the creditors as it would be by means of the deed, and the fact that the notes were not given up and the mortgages canceled is explained by the attorney who

prepared those instruments, by plaintiff's hurry to leave Grant County, he merely signing the deeds, leaving the preparation of the option and the leases with the attorney to be prepared and forwarded to him at Portland, which was done, and where they were executed and signed by the plaintiff and returned to the trustee. The attorney who drew the papers stated that the notes were in his safe and would have been delivered to plaintiff at any time had he demanded them, and that the fact of their not having been delivered and the mortgages canceled was a mere oversight, without any intent to use the notes as obligations against the plaintiff.

Taking the testimony as a whole, we can confidently say that, if after this deed and the other papers had been executed, an attempt had been made to foreclose the mortgages or to sue on the note, this plaintiff could have pleaded this transaction as a complete bar. He was under no obligation to take the place or to pay a single dollar which he did not choose to pay. He held an option to purchase within the time mentioned, which he could exercise or not as he saw fit, and, if he failed to exercise it, he owed the defendants nothing.

■ ■ The fact that he entered into a contract of lease for the premises is an admission of the trustee's title. The tenant is not permitted to deny that at the time he leased the premises his landlord had title to them. On the contrary, by the mere act of taking and subscribing to the terms of the lease he attorns to the lessor and admits that the lessor is the owner of the premises. This the plaintiff not only did by entering into one lease but into two leases, and he cannot deny that the lessor had title to the

property under such circumstances. Even if the deed to Bayley had been intended as a mortgage, the taking of this lease would have been such a recognition of Bayley's right to possession as would have made the defendants mortgagees in possession, and plaintiff cannot maintain trespass under such circumstances. On the whole, we think the intent of the parties was by an absolute purchase and sale to extinguish Blackwell's debt; that it had that effect, and that his option having expired without his having complied with its terms, he had no claim to the premises. Nevertheless, the defendants having made no effort or offer to turn over to the plaintiff the notes and cancel the mortgages executed by plaintiff, they ought to pay for their carelessness in this respect.

The judgment of the court below will be affirmed except that neither party shall recover costs or disbursements either in the lower court or here.

AFFIRMED.